IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 15-32977 |
| WORLD MARKETING DALLAS, LLC | ) | |
| | ) | |
| | ) | |
| Debtor/Debtor-in-Possession. | ) | Hon. Timothy A. Barnes |

**INTERIM ORDER AUTHORIZING DEBTOR TO USE PREPETITION COLLATERAL, INCLUDING CASH COLLATERAL, AND GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363 AND SCHEDULING A FINAL HEARING**

Upon the motion (the "Motion") of the above-captioned debtor and debtor-in-possession (the "Debtor"), pursuant to sections 361 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), for the entry of an order authorizing the Debtor to use cash collateral of Associated Bank, National Association (the "Lender") and providing adequate protection to the Lender; the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties-in-interest; and it appearing that notice of the Motion was good and sufficient under the particular circumstances and that no other or further notice need be given; and upon the record in this case; and after due deliberation thereon and good and sufficient cause appearing therefore;

**THE DEBTOR AND LENDER REPRESENT TO THE COURT AS FOLLOWS:**

1. *Prepetition Loans and Liens.*

    (a)    The Lender asserts that prior to the Petition Date, the Lender made loans and other financial accommodations available to World Marketing Holdings, LLC ("Holdings") pursuant to (i) a certain Credit Agreement dated October 17, 2014 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), between Holdings and the Lender and (ii) that certain Revolving Note dated October 17, 2014 (as

amended, restated and modified from time to time and together with any renewals or extensions thereof or exchanges or substitutions therefor, the "Revolving Note"), between Holdings and the Lender.

(b)    The Lender asserts that as security for the obligation due to Lender under the Credit Agreement and Revolving Note, the Debtor, World Marketing Chicago, LLC, World Marketing Atlanta, LLC, Blue Streak Holdings, Inc., Robert M. Kraft, and Robert W. Kraft (collectively, the "Guarantors" and each a "Guarantor") executed and delivered to Lender that certain Guaranty dated October 17, 2014 (as amended, restated, supplemented or otherwise modified from time to time, the "Guaranty") jointly and severally, absolutely and unconditionally guarantying payment and further securing the obligations owing by Holdings to Lender.

(c)    The Lender asserts that:

(i)    As of the Petition Date, Holdings and the Guarantors, including the Debtor, were indebted and liable to the Lender under the Credit Agreement, the Revolving Note, the Guaranty, and all documents, instruments, and agreements related to or entered into in connection with the foregoing (collectively, with the Credit Agreement, the Revolving Note, the Guaranty, and the Security Agreement (as defined below), the "Prepetition Loan Documents") in the aggregate amount of at least $2,116,740.18 (including principal, interest, fees, costs, expenses (including attorneys' fees), and other amounts), the "Prepetition Loan Debt").

(ii)    The Prepetition Loan Debt is (A) legal, valid, binding, and enforceable against the Debtor and (B) not subject to any contest, objection, recoupment, defense, counterclaim, offset, claim of subordination, claim of re-characterization, claim of

avoidance of any nature, attack, or challenge under the Bankruptcy Code, other applicable non-bankruptcy law, or otherwise.

(d) The Lender asserts that:

(i) As security for the payment of the Prepetition Loan Debt, the Debtor granted to the Lender security interests in and liens upon all or substantially all of the Debtor's tangible and intangible personal property and assets, wherever located and whether then owned or thereafter arising or acquired by the Debtor, including, without limitation, all of the Debtor's accounts, chattel paper, computer hardware and software, deposit accounts, documents, financial assets, general intangibles, goods, instruments, intellectual property, investment property, letter-of-credit rights, money, commercial tort claims, and supporting obligations, all as more fully described in the Prepetition Loan Documents (all such property, as the same existed on or at any time prior to the Petition Date, together with all proceeds thereof, including, without limitation, the Cash Collateral (as defined below), being referred to herein as, the "Prepetition Collateral" and such liens thereon shall be referred to as, the "Prepetition Liens"), pursuant to, among other things, that certain Security Agreement dated October 17, 2014 (as amended, restated, supplemented or otherwise modified from time to time, the "Security Agreement"), between the Debtor, Holdings, World Marketing Chicago, LLC, World Marketing Atlanta, LLC, and the Lender.

(ii) The Prepetition Loan Debt is fully secured by the assets of the Debtor, World Marketing Chicago, LLC and World Marketing Atlanta, LLC.

(iii) The Prepetition Liens are legal, valid, enforceable, non-avoidable, and duly and properly perfected security interests in and liens upon the Prepetition Collateral and, as of the Petition Date and without giving effect to this Interim Order, the Debtor is not

aware of any liens or security interests having priority over the Prepetition Liens, except certain "Permitted Liens" (as defined in the Credit Agreement).

(iv)    The Prepetition Liens on the Prepetition Collateral were granted to the Lender for fair consideration and reasonably equivalent value, and were granted contemporaneously with the making of the loans and financial accommodations secured thereby.

**IT IS HEREBY FOUND, DETERMINED, ORDERED, AND ADJUDGED THAT:**

1.    *Petition Date.*  On September 28, 2015 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Illinois (this "Case"). The Debtor has retained possession of its property and continues to operate and manage its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.    *Jurisdiction.*  This Court has core jurisdiction over this Case, the Motion, and the parties and property affected by this interim order (this "Interim Order") pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    *Objections.*  All objections to the entry of this Interim Order, if any, are resolved hereby or, to the extent not resolved, are overruled.

4.    *Cash Collateral.*  Subject to the Investigation Period (as defined below) and paragraph 10 below:

(a)    All cash, cash proceeds, and all other cash collateral of the Debtor wherever located and whether constituting original collateral, proceeds from advances or other loans, or proceeds of the Prepetition Collateral, are encumbered by the Prepetition Liens and constitute "cash collateral" of the Lender (as such term is defined in section 363(a) of the Bankruptcy Code) (all such cash, cash proceeds, and other "cash collateral", the "Cash Collateral" and together with the Prepetition Collateral, the "Collateral"). Without limiting the

4

generality of the foregoing, the Cash Collateral shall include all of the cash proceeds of the Prepetition Collateral in which the Lender has an interest, whether such interest existed as of the Petition Date or arises pursuant to this Interim Order, any other order of the Court, applicable law, or otherwise.

(b)    For the avoidance of doubt, pursuant to the Prepetition Loan Documents and section 552(b) of the Bankruptcy Code, the Lender has a valid, duly perfected, first-priority lien upon and security interest in and to all of the cash of the Debtor derived from Prepetition Liens, whether obtained on, prior to, or after the Petition Date (which liens and security interests constitute and are included in the term "Prepetition Liens" as used herein).

5.    *Use of Prepetition Collateral.*    The Debtor is hereby authorized, pursuant to sections 361 and 363 of the Bankruptcy Code, to use the Cash Collateral of the Lender only through November 3, 2015 (in accordance with the attached Budget plus no more than 10% of the total proposed expense payments), and may not be extended other than on the express written consent of the Lender or order of the Court.

6.    *Adequate Protection.*

(a)    *Use and Payments.*    As adequate protection for the Debtor's use of the Authorized Cash Collateral, the Debtor shall use the Authorized Cash Collateral only in accordance with paragraph 5 above.

(b)    *Adequate Protection Lien.*    Lender shall receive, as adequate protection to the extent of the diminution in value of its perfected interests in the Cash Collateral, a replacement lien in the Prepetition Collateral and in the post-petition property of the Debtor of the same nature and to the same extent and in the same priority it had in the Prepetition Collateral, and to the extent such liens and security interests extend to property pursuant to

Section 552(b) of the Bankruptcy Code (the "Adequate Protection Lien"). In addition, the Lender shall receive, as adequate protection to the extent of the diminution in value of its perfected interests in the Cash Collateral, a claim under Section 507(b) of the Bankruptcy Code.

(c) *Automatic Perfection.* The Adequate Protection Lien shall be deemed valid, binding, enforceable, and perfected upon entry of this Interim Order without the need to file any UCC-1 financing statements, mortgages, deeds of trust, security deeds, notices of lien, or any similar document or the need to take any other action (including possession of any of the collateral subject to the Adequate Protection Liens) in order to validate the perfection of any of the Adequate Protection Liens. If the Lender shall, in its discretion, choose to file any such mortgages, deeds of trust, security deeds, or UCC-1 financing statements, or take any other action to validate the perfection of any part of the Adequate Protection Lien, the Debtor and its officers are directed to execute any documents or instruments as the Lender shall reasonably request, and all such documents and instruments shall be deemed to have been filed or recorded as of the Petition Date. The Lender may, in its discretion, file a certified copy of this Interim Order in any filing office in each jurisdiction in which a Debtor is organized or has or maintains any collateral or an office, and each filing office is directed to accept such certified copy of this Interim Order for filing and recording.

(d) *Reservations.* The Lender reserves the right to argue for and demand, and the Debtor reserves its right to challenge the Lender's arguments and demands, additional adequate protection for periods not covered by this Interim Order, including, without limitation, in connection with the Final Hearing and any Final Order (each as defined below).

7. *Termination of Use of Cash Collateral.* Notwithstanding anything to the contrary contained herein, the Debtor's right to use the Cash Collateral shall expire on the earliest to

occur of: (i) November 3, 2015; (ii) the entry of an order by this Court terminating the use of Cash Collateral; (iii) the conversion of the Debtor's bankruptcy case to a case under chapter 7 of the Bankruptcy Code; (iv) the appointment of a trustee or examiner or other representative with expanded powers for the Debtor; (v) the occurrence of the effective date or consummation of a plan of reorganization, or (vi) the Debtor's non-compliance with any term or provision of this Interim Order, after notice from Lender to counsel to the Debtor of the non-compliance and a seven (7) calendar day period for the Debtor to cure (as defined below) (the first such occurrence being hereinafter referred to as the "Termination Event"). On and after the Termination Event, the Lender may terminate the Debtor's authority to use the Authorized Cash Collateral upon five (5) business days' notice to the Debtor, counsel to the Debtor, counsel to the official committee of unsecured creditors to the extent that such committee has been formed, and the U.S. Trustee (the last day of such three business day period, the "Termination Date"). From and after the Termination Date, the Debtor shall no longer, pursuant to this Interim Order, the Prepetition Loan Documents, or otherwise, be authorized to use the Authorized Cash Collateral, unless authorized by the Court (and the limited consent herein to the use of Authorized Cash Collateral shall be terminated).

8.   *Financial Reporting.*  The Debtor shall furnish the Lender with all financial data and documents required under the Guaranty and the Prepetition Loan Documents as well as an actual-to-budget for the week prior to October 6, 2015 by October 6, 2015 and reports as of the closing of the prior business day on the Tuesday and Friday of every week for accounts receivable aging and work-in-progress.

9.   *Investigation Period.*  Except as otherwise provided below, in consideration of the Lender's agreements hereunder, the Debtor has waived and shall be barred from (i) challenging

the amount, validity, extent, perfection, or priority of or seeking to set aside, avoid, offset, or subordinate any of the Prepetition Loan Debt or any Prepetition Liens and (ii) from asserting any other claims or causes of action against the Lender.  Notwithstanding the foregoing, the Debtor shall be permitted 45 calendar days from the entry of this order and any party-in-interest (other than the Debtor) shall be permitted 75 calendar days from October 28, 2015 (the "Investigation Period") to investigate and challenge the Lender's assertions set forth above only by filing an adversary proceeding on or prior to the last day of the Investigation Period.  If the a party-in-interest does not file and serve upon Lender's counsel an adversary proceeding naming the Lender to determine the extent, validity, and priority of Lender's liens or interest in the Debtor's assets prior to the end of the Investigation Period: (i) the Debtor and all other parties in interest shall be forever barred from taking any such action or asserting any objection to the validity, priority, extent, and/or perfection of Lender's liens, security interests, mortgages, and any other interest of the Lender in the Debtor's assets; and (ii) the Lender's claim in the amount of the Prepetition Loan Debt will be deemed allowed and fully secured.

10.   *Effectiveness.*  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

11.   *Final Hearing; Notice; Objection Deadline.*

(a)   *Final Hearing.*  The hearing to consider entry of a final order (as "Final Order") on the Motion shall take place on November 3, 2015 at 10:30 a.m. (the "Final Hearing").

(b)   *Notice of Final Hearing.*  Within three business days of the entry of this Interim Order, the Debtor shall serve, by first class mail or electronic mail, a copy of this Interim Order and a notice of the Final Hearing (the "Final Hearing Notice"), to:  (a) the United States Trustee; (b) the Lender's counsel; (c) all known secured creditors of the Debtor; (d) the Debtor's

20 largest unsecured creditors; and (d) any party who filed a request for notices in this chapter 11 case pursuant to Bankruptcy Rule 2002 as of the date of this Interim Order.

(c) *Objection Deadline.* The Final Hearing Notice shall state that any party-in-interest objecting to the relief sought at the Final Hearing shall be made in writing setting forth with particularity all facts relied upon and all grounds therefor, and shall be filed with the Court on October 27, 2015 (the "Objection Deadline"), and concurrently served so as to be *actually received* by the Objection Deadline by the following parties: (i) counsel for Debtor; (ii) counsel for the Lender, Katten Muchin Rosenman LLP, 525 West Monroe Street, Chicago, Illinois 60661, Attn: John P. Sieger; and (iii) the U.S. Trustee.

Dated:                                                                  **ENTERED:**

**07 OCT 2015**
                                                                        _____
                                                                        UNITED STATES BANKRUPTCY JUDGE

CONSENTED AND AGREED TO BY:

**WORLD MARKETING DALLAS, LLC**

By: _____
         Its Counsel

**ASSOCIATED BANK, NATIONAL ASSOCIATION**

By: _____
         Its Counsel

## World Marketing Dallas, LLC

| Week of | | 9/28/2015 | 10/5/2015 | 10/12/2015 | 10/19/2015 | 10/26/2015 |
|---|---|---|---|---|---|---|
| Beginning Cash Balance | | 502,967 | 632,967 | 630,103 | 691,878 | 807,878 |
| Estimated Receipt of Receivables | | 130,000 | 130,000 | 130,000 | 130,000 | 130,000 |
| **Disbursements** | | | | | | |
| Payroll | | | | | | |
| Marc Mayo | AR/Data | 4,590 | 4,590 | 4,590 | | 4,461 |
| Richard Cahill | Building/Customer | 4,461 | 4,461 | 4,461 | | 1,759 |
| Tina Cabello | Shipping/Warehouse | 1,759 | 1,759 | 1,759 | | 3,356 |
| Mendy Ishibashi | Human Resources | 3,356 | 3,356 | 3,356 | | 1,734 |
| Juan Ibarra Salazar | Schedule/Maintenance/Equipment | 1,734 | 1,734 | 1,734 | | 2,962 |
| Dustin Johnson | IT/Security/Network | 2,962 | 2,962 | 2,962 | | 1,515 |
| Gail Choquette | Data/Customer | 1,515 | 1,515 | 1,515 | | |
| Tony Parris | Customer Service Bill | 2,276 | 2,276 | 2,276 | | |
| | Admin for Calls | 1,748 | 1,748 | 1,748 | | |
| Douglas Nearhood | Operations | 3,844 | 3,844 | 3,844 | | 3,844 |
| | Forklift Driver | 1,116 | 1,116 | 1,116 | | |
| | Forklift Driver | 1,116 | 1,116 | 1,116 | | |
| Gezzelle Harris | Facility/Customer Service | 3,944 | 3,944 | 3,944 | | 3,944 |
| | Printer to Run Equipment | 2,116 | 2,116 | 2,116 | | |
| | Operator | 1,116 | 1,116 | 1,116 | | |
| | Operator | 1,116 | 1,116 | 1,116 | | |
| | Operator | 1,116 | 1,116 | 1,116 | | |
| | Postal Clerk | 1,538 | 1,538 | 1,538 | | |
| Coleen Acken | Data Coordinator | 3,000 | 3,000 | 3,000 | | 3,000 |
| Karen Hendricks | Rebates | 1,492 | 1,492 | 1,492 | | |
| Wanda Hargrove | Rebates | 1,280 | 1,280 | 1,280 | | |
| Sandr Knodl | Corporate Accounting | 2,500 | 2,500 | 2,500 | | 2,500 |
| Payroll Taxes | | 50,811 | 50,811 | 50,811 | - | 15,787 |
| Total Payroll | | 5,589 | 5,589 | 5,589 | - | 1,737 |
| | | 56,401 | 56,401 | 56,401 | - | 17,524 |
| **Professional Fees** | | | | | | |
| RWK Global Holdings | Public Relations | 3,333 | | | | |
| JRM Advisors | | 1,667 | | | | |
| Rent | | | | 9,000 | 12,000 | |
| Utilites/Phone/Internet | | 68,638 | | | | |
| Inurance | | | | | | |
| Payroll Processing | | 825 | 825 | 825 | | 825 |
| Miscellaneous Supplies | | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Total Disbursements | | 132,864 | 68,226 | 68,226 | 14,000 | 20,349 |
| Receipts in Excess of Disbursements | | (2,864) | 61,774 | 61,774 | 116,000 | 109,651 |
| Ending Cash Balance | | 632,967 | 630,103 | 691,878 | 807,878 | 917,529 |



EXHIBIT A